```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────
JUAN CARLOS HERRERA-GOMEZ,

                  Petitioner,          08 Civ. 7299 (JGK)
                                       05 Cr. 495 (JGK)
       - against -
                                       MEMORANDUM OPINION
UNITED STATES OF AMERICA,              AND ORDER

                  Respondent.
────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The petitioner, Juan Carlos Herrera-Gomez ("Herrera-Gomez") appearing pro se, moves pursuant to 28 U.S.C. § 2255 to vacate a sentence imposed following his conviction, pursuant to a guilty plea, for conspiring in violation of 21 U.S.C. § 846 to distribute 1 kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A).  The petitioner contends that trial counsel was ineffective because (1) he failed to argue for a safety valve adjustment to Herrera-Gomez's sentence, (2) he failed to argue for a downward departure based on the petitioner's intent to consent to deportation, and (3) he failed to object to this Court's pronouncement of sentence allegedly before allowing the petitioner the opportunity to speak.  The petitioner also contends that appellate counsel was ineffective because she allegedly failed to send a copy of her Anders brief to him and failed to give him notice that she had filed a motion to withdraw from representing him.

1

I.

On February 20, 2007, the petitioner entered a guilty plea pursuant to a written Plea Agreement (the "Plea Agr.") to one count of conspiracy, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). This Court sentenced the petitioner on September 26, 2007 principally to a term of incarceration of 135 months, to be followed by 5 years of supervised release. (Sent. Tr. 20-22.) In addition, a forfeiture order was entered against him in the amount of $500,000. (Sent. Tr. 23-24.)

Pursuant to the Plea Agreement, the parties stipulated that under United States Sentencing Guidelines § 2D1.1, the base offense level for Count One of the Indictment was 36. (Plea Agr. at 2.) After credit for acceptance of responsibility, the offense level was 33. (Plea Agr. at 2.)

The Government calculated that the petitioner had two criminal history points from two prior convictions for driving while impaired. (Plea Agr. at 2-3.) Accordingly, the parties stipulated that, with Criminal History Category II, the stipulated Guidelines Range was 151 to 188 months' imprisonment. (Plea Agr. at 3.)

The Plea Agreement provided that no downward or upward departure from the stipulated Guidelines Range was warranted,

except the defendant was permitted to move for a downward departure on the grounds that his criminal history category substantially overstated the seriousness of his criminal history or the likelihood that he would commit other crimes, pursuant to U.S.S.G. § 4A1.3(b)(1). (Plea Agr. at 3.) The Plea Agreement stated that even if the petitioner were granted such a motion, he would not be eligible for relief from the statutory minimum term of 120 months pursuant to the policy statements of U.S.S.G. § 4A1.3(b)(3)(B). (Plea Agr. at 3.)

The Plea Agreement contained an appellate waiver provision by which the defendant agreed not to appeal any sentence within or below the stipulated Guidelines range of 151 to 188 months incarceration. (Plea Agr. at 4-5.) It was further stipulated that any sentence within the stipulated guidelines range "is reasonable." (Plea Agr. at 3-4.)

The defendant entered his guilty plea on February 20, 2007, with the assistance of a Spanish interpreter. Before accepting the plea, this Court advised the petitioner of each of the constitutional rights he would be waiving by pleading guilty. The petitioner indicated his understanding and his desire to plead guilty. (Plea Tr. 7-17.) He further indicated that he had discussed the indictment and his guilty plea with his attorney and that he was satisfied with his attorney. (Plea Tr. 6, 9-11.) The petitioner acknowledged that the indictment had

3

been translated for him, and that he understood it, and the Court summarized it for him. (Plea Tr. 10-11.) He also told the Court that he understood that the maximum penalty he was confronting was life imprisonment and that the mandatory minimum sentence was ten years of imprisonment. (Plea Tr. 12-13.) This Court then explained to the petitioner the operation of the advisory Sentencing Guidelines and the petitioner indicated that he understood. (Plea Tr. 15-16.)

The petitioner indicated that the Plea Agreement had been read to him in Spanish before he signed it and that he fully understood it. (Plea Tr. 2-3, 17.) He also confirmed that the Agreement contained "everything that [he] understood about [his] plea and [his] sentence." (Plea Tr. 17-18.) The petitioner testified that no promises or threats had been made to him to induce him to plead guilty and that he was pleading guilty voluntarily and of his own free will. (Plea Tr. 18).

This Court then read to the petitioner the appellate waiver provision in the Agreement. The Court asked the petitioner, "Do you understand, Mr. Herrera, that you have given up or waived your right to appeal or otherwise challenge or litigate any sentence within the range of 151 to 188 months or any sentence below that range?" The petitioner responded, "Yes, Your Honor." (Plea Tr. 18). The petitioner then admitted his guilt, and explained the factual basis for the plea.

4

Prior to sentencing, in a written submission, the petitioner's trial counsel requested that the Court grant a horizontal departure from Criminal History Category II to Criminal History Category I pursuant to U.S.S.G. § 4A1.3(c) on the grounds that Category II significantly overstated the seriousness of the petitioner's criminal history.  (Ex. D at 1-3.)  Trial counsel explained that in the time since the petitioner's prior alcohol-related convictions, he had undertaken serious remedial action to overcome his alcoholism and had been abstinent since 2001.  (Ex. D at 2, 6.)  Reduction to Category I would reduce the petitioner's Guidelines sentencing range to 135-168 months of imprisonment.

The petitioner appeared for sentencing before this Court on September 26, 2007, with the presence of a Spanish interpreter, who translated the entire proceeding for him.  The Court granted the petitioner's motion for a horizontal departure and otherwise accepted the findings of fact in the Pre-sentence Investigation Report ("PSR").  (Sent. Tr. at 18-20.)  After considering the various sentencing factors set forth in 18 U.S.C. § 3553(a), this Court imposed a term of imprisonment of 135 months, the bottom of the Guidelines Range after granting the horizontal departure, to be followed by five years' supervised release, and a forfeiture order of $500,000.  (Ex. E at 20-22.)  A judgment

5

setting forth the terms of the sentence was signed on October 18, 2007.

The petitioner filed a pro se notice of appeal on September 28, 2007. The petitioner was appointed an appellate counsel under the Criminal Justice Act to represent him on appeal.

By motion filed on February 7, 2008, appellate counsel moved to be relieved as counsel on the grounds that there were no non-frivolous issues on appeal. She submitted an appellate brief, pursuant to Anders v. California, 386 U.S. 738 (1967), stating that upon a conscientious review of the record, there were no non-frivolous issues to be pursued by the petitioner. Appellate counsel stated in the brief her belief that this Court had complied with all legal requirements in accepting the petitioner's plea, and that the petitioner had waived his right to appeal because he had pleaded guilty voluntarily and had voluntarily waived his right to appeal both in the written plea agreement and at the time of the plea proceeding. (Ex. I at 9-12.) Appellate counsel determined that there were no non-frivolous issues to be pursued by the petitioner with respect to his sentencing because the Court considered both the applicable Guidelines range and the factors set forth in 18 U.S.C. § 3553(a). (Ex. I at 12-13.) She further noted that this Court had granted the petitioner's application for a departure from Criminal History Category II to Category I and that he had been

6

sentenced to the bottom of the resulting Guidelines Range, 135 months' imprisonment. (Ex. I at 13.)  Appellate counsel concluded that because the petitioner faced a maximum sentence of life imprisonment, this Court's sentencing decision could not be considered unreasonable or an abuse of discretion.  (Ex. I at 13-14.)

In connection with her motion and the Anders brief, appellate counsel affirmed that she had sent "a letter to [the petitioner] advising him of the ramifications of an Anders brief and of his right to seek the assistance of other counsel or to file a pro se response" and that a Spanish translation of that letter had been sent to the petitioner as well.  (Ex. J.)  Both versions of the letter were sent to the petitioner at his place of incarceration, Federal Correctional Institution Allenwood Low in White Deer, Pennsylvania.  (Ex. J.)

The Government filed a motion for summary affirmance on April 16, 2008, which was supported by an affirmation setting forth the reasons that there were no non-frivolous issues on appeal.  (Ex. K.)  On July 18, 2008, the Anders motion and the Government's motion for summary affirmance were granted.  (Ex. L.)

The petitioner filed this motion dated July 15, 2008 to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, in which he raised the claim of ineffective

7

assistance of counsel at sentencing ("Initial 2255 Motion".) The petitioner filed a supplemental § 2255 motion to raise a claim of ineffective assistance of appellate counsel ("Supp. 2255 Motion").  He did not file a brief with the Second Circuit appealing his conviction or sentence.

II.

The Government argues at the outset that the petitioner's guilty plea and Plea Agreement prohibit this Court from reaching the merits of a challenge to the petitioner's sentence.  See Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008).  The Court of Appeals for the Second Circuit has explained that

> in no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam); see also United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998) (per curiam); Czernicki v. United States, 270 F.Supp.2d 391, 393 (S.D.N.Y. 2003); Henriquez v. United States, No. 03 Civ. 478, 2003 WL 21242722, at *1 (S.D.N.Y. May 29, 2003).  The waiver, however, does not prevent a petitioner from "seek[ing] relief from the underlying plea

8

where the plea was not knowing and voluntary." United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005) (per curiam); see also Almonte v. United States, Nos. 06 Cr. 460, 08 Civ. 1192, 2008 WL 2755818, at *2 (S.D.N.Y. July 14, 2008).  Furthermore, "[c]laims of ineffective assistance of counsel can survive Section 2255 waivers, but only when the claim relates to the negotiation and entry of the plea [] agreement."  United States v. Owolabi, No. 07 Civ. 9487, 2008 WL 1809180, at *2 (S.D.N.Y. Apr. 18, 2008) (citing United States v. Hernandez, 242 F.3d 110, 114 (2d Cir. 2001)).

In this case, the petitioner does not argue that his plea was entered into involuntarily or unknowingly, and does not contend that he received ineffective assistance of counsel in connection with the negotiation of the Agreement.  During his plea allocution before this Court, the petitioner confirmed that he entered into the Agreement voluntarily, that he was satisfied with counsel's representation, and that he understood that, as part of the Agreement, he was waiving the right to appeal any sentence within the range of 151 to 181 months or below that range.

Therefore, the § 2255 motion is procedurally barred based upon the petitioner's guilty plea and the waiver provision in the Plea Agreement.  See, e.g., Montalvo v. United States, 174 F. Supp. 2d 10, 14 (S.D.N.Y. 2001) (denying § 2255 motion as

9

procedurally barred by waiver in plea agreement where sentence was within Guidelines Range); Hailstock v. United States, No. 01 Civ. 3428, 2001 WL 1131989, at *2 (S.D.N.Y. Sept. 24, 2001) (waiver of § 2255 claim in plea agreement was enforceable in absence of showing that waiver was secured due to ineffective assistance of counsel); see also Owolabi, 2008 WL 1809180, at *3; Isaza v. United States, Nos. 04 Civ. 6496, 00 Cr. 979, 2008 WL 1849170, at *3 (S.D.N.Y. April 24, 2008) (same); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (waiver in plea agreement barred § 2255 claim, even as to alleged ineffective assistance occurring post-plea); Riggi v. United States, No. 04 Civ. 7852, 2007 WL 2245595, at *6 (S.D.N.Y. Aug. 6, 2007) (plea agreement barred defendant from bringing § 2255 motion to challenge sentence).

III.

Even if this § 2255 motion were not procedurally barred, the petitioner's arguments regarding ineffective assistance of trial counsel fail on their own terms.

A.

To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the

time, and (2) his counsel's deficient performance was prejudicial to his case. See Strickland v. Washington, 466 U.S. 668, 686 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

The petitioner cannot meet the first prong of this test merely by showing that his counsel employed a poor strategy or made a wrong decision. Instead, the defendant must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. In fact, there is a "strong presumption" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89).

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Ramos v. United States, No. 97 Civ. 2572, 1998 WL 230935, at *3 (S.D.N.Y. May 8,

11

1998).  In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different. See United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997).

B.

The petitioner contends that trial counsel was ineffective because he failed to argue for a safety valve adjustment to the petitioner's sentence of 135 months imprisonment.  However, this argument has no merit because a defendant does not qualify for a safety valve adjustment when he has more than one criminal history point, regardless of whether he was granted a downward departure because his criminal history category overrepresented the seriousness of his criminal history.  A defendant can obtain a safety valve adjustment if "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines."  18 U.S.C. § 3553(f)(1).

At the time of sentencing, the petitioner had two criminal history points based on his prior convictions, which placed him in Criminal History Category II.  The Court determined that this overstated the petitioner's criminal history and granted him a horizontal departure from Category II to Category I, pursuant to U.S.S.G § 4A1.3.  Category I is defined to include only those defendants who have, at most, one criminal history point.  See

12

U.S.S.G. Ch. 5 Pt. A.  The petitioner argues that he should qualify for the safety valve even though he has two criminal history points because, when this Court moved him from Criminal History Category II to Category I, it treated him as if he had only one criminal history point.  However, the Court of Appeals for the Second Circuit has held that to be eligible for the safety valve adjustment, the defendant must have no more than one criminal history point based on the initial calculation of his criminal history under Chapter 4 of the Guidelines, regardless of whether the sentencing judge decided to depart horizontally to Criminal History Category I.  See United States v. Resto, 74 F.3d 22, 28 (2d Cir. 1996) (holding that defendant was not eligible for safety valve provision because he had more than one criminal history point even though he had been granted downward departure to Criminal History Category I); see also United States v. Sherpa, 265 F.3d 144, 148 (2d Cir. 2001) (same); United States v. Robinson, 158 F.3d 1291, 1293-94 (D.C. Cir. 1998) (same); United States v. Orozco, 121 F.3d 628, 629-30 (11th Cir. 1997) (same).

Because the petitioner had two criminal history points based upon the initial calculation of his criminal history, he could not have qualified for the safety valve.  Therefore, trial counsel's decision not to argue for a safety valve adjustment did not constitute ineffective assistance of counsel.

13

C.

The petitioner also argues that trial counsel was ineffective in failing to argue for a downward departure based on the petitioner's intent to consent to deportation. This argument also fails.

"[A] defendant seeking a departure under [U.S.S.G.] § 5K2.0 for consenting to deportation must present a colorable, nonfrivolous defense to deportation, such that the act of consenting to deportation carries with it unusual assistance to the administration of justice." United States v. Galvez-Falconi, 174 F.3d 255, 260 (2d Cir. 1999). The petitioner cannot present a colorable, nonfrivolous defense to deportation because he was an aggravated felon as a result of his conviction in this case. See 8 U.S.C. § 1101(a)(43)(B). As an aggravated felon, he was subject to mandatory deportation. See 8 U.S.C. § 1227(a)(2)(B)(i) (any alien convicted of violating or conspiring to violate controlled substances statutes is deportable); 8 U.S.C. § 1229b(a)(3)(b)(1)(C) (Attorney General may not cancel removal of any deportable alien who has been convicted of aggravated felony).

The petitioner stated that he had a permit to stay and work in the United States permanently and that his wife and children are United States citizens. (Initial 2255 Motion at 5.) But

14

the fact that he has family in the United States is not a defense to deportation.  See Agramonte-Rosario v. United States, No. 00 Civ. 4732, 2002 WL 31545848, at *4 (S.D.N.Y. Nov. 14, 2002) (holding that family ties and conditions of incarceration are not colorable, nonfrivolous defenses to deportation). Although the petitioner argues in his reply to the Government's brief that he can seek deferral from removal if he fears returning to Colombia, he does not allege that he fears returning to Colombia or that he will suffer persecution there. In any event, fear of persecution would not be a colorable, nonfrivolous defense to deportation in this case.  See Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 517 (S.D.N.Y. 2005) (holding that petitioner's claim that he was legal United States resident, had several family members in United States, that family would suffer economically if he were deported, and that he would suffer persecution in his native country was not colorable, nonfrivolous defense to deportation).

Moreover, in his Plea Agreement the defendant agreed not to argue for downward departure for any reason other than moving from Criminal History Category II to Category I.  (Plea Agr. at 3.)

Because the petitioner had no colorable, nonfrivolous defense to deportation, an argument for downward departure based upon intent to consent to deportation would have failed.  Trial

counsel appropriately decided not to make such an argument, and that decision did not constitute ineffective assistance.

### D.

The petitioner argues that trial counsel was ineffective because he failed to object to this Court's pronouncement of sentence before allowing the petitioner the opportunity to allocute.  This argument fails because this Court did allow the petitioner an opportunity to speak before pronouncing his sentence.

The petitioner's argument is based on the second time the Court addressed him, which occurred after it indicated the sentence it intended to pronounce.  But the Court also addressed the petitioner before indicating the sentence:

> THE COURT: I'll listen to you for anything you wish to tell me in connection with sentence; any statement you would like to make on your own behalf, anything at all that you would like to tell me.
>
> THE DEFENDANT: Okay.  Oh, okay.  Your Honor, good afternoon, sir.
>
> I want to thank you for having me here in your courtroom.  I want to thank my attorney.  I have no words to thank him for the advice that he has given me, because he has been part of my rehabilitation.  I also want to congratulate the Madame Prosecutor, the federal agents who brought, to success, this investigation.
>
> I also want to ask my family for forgiveness.  They don't deserve what is happening, because I am to blame.

> I also want to apologize to the United States, because
> I am truly repentant.  Because the children of the
> United States do not deserve this evil, which are
> drugs.  I want to ask your Honor for clemency.  I
> assure you that I want to be part of the solution and
> not part of the problem.  The time that I have been in
> prison has rehabilitated me.  And I am ready to face
> your decision, your Honor.

(Sentencing Tr. 14-15).

Because this Court did not pronounce the petitioner's sentence before allowing him the opportunity to allocute, trial counsel was not ineffective for failing to object before pronouncement of the petitioner's sentence.

IV.

The petitioner argues that he received ineffective assistance of appellate counsel because appellate counsel allegedly failed to give him notice that she had filed a motion to withdraw and failed to send him a copy of her Anders brief. However, the petitioner's appellate counsel affirmed that she sent the defendant a letter informing him that she submitted an Anders brief and informing him of his right to file a pro se brief or to request the assistance of another counsel.  (Hershey Aff. ¶ 2.)  The petitioner claims he never received the letter and argues that filing proof of service with the Court of Appeals is part of the Anders procedural requirements.  However, proof of service of the Anders brief on the petitioner at FCI

17

Allenwood on February 7, 2008 was filed with the Court of Appeals along with the original copy of the petitioner's Anders brief.

Because appellate counsel provided an affidavit stating that she had given notice to the petitioner and because she filed proof of service of the Anders brief on the petitioner, she made no error.  Therefore, the petitioner's ineffective assistance of counsel claim fails under Strickland's first prong.  See Strickland, 466 U.S. at 686.  Moreover, the petitioner's argument also fails under the second Strickland prong because the petitioner has offered no argument that he proffers should have indicated any nonfrivolous basis for appeal.

CONCLUSION

For the reasons explained above, the petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence is **denied**.  The Court has carefully considered all the arguments presented by the parties.  Any argument not expressly discussed above is either moot or without merit.  The Clerk of the Court is directed to enter judgment dismissing the complaint and closing the case.  The Court declines to issue a certificate of appealability because the

argument not expressly discussed above is either moot or without merit. The Clerk of the Court is directed to enter judgment dismissing the complaint and closing the case. The Court declines to issue a certificate of appealability because the petitioner has failed to make a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c).

**SO ORDERED.**

**Dated:**    **New York, New York**
           **November 25, 2009**

                                       John G. Koeltl
                                       United States District Judge